

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

DEBBIE ECHOLS and         §
RHONDA ECHLS,            §
                          §
       **PLAINTIFFS,**        §
                          §         **CIVIL ACTION NO.**
**v.**                            §
                          §       **WO9CA033**
**UNITED STATES OF AMERICA,**   §
                          §
       **DEFENDANT.**        §

## NOTICE OF REMOVAL

COMES NOW United States of America, on behalf of the U.S. Department of Agriculture (USDA), Farm Service Agency, by and through the undersigned Assistant United States Attorney for the Western District of Texas, and files this Notice of Removal pursuant to 28 U.S.C. § 1442(a)(1).

1.       This lawsuit was filed on January 22, 2009, in the 77th Judicial District Court of Limestone County, Texas, bearing Cause No. 28,939-A. (A similar and/or related case has been filed in this Court bearing Civil Action Number W-09-CA-012.)

2.       Copies of all process, pleadings, and orders in the State court action are attached to this notice. (*See* Exhibit 1). No trial has been conducted in this action.

3.       This Court has subject matter jurisdiction over this action because the Defendant, USDA, Farm Service Agency, is an agency of the United States and the legal matters involved are governed by Federal statutes and regulations, 28 U.S.C. 1442 §(a)(1).

4.       Venue for removal is proper in this district under 28 U.S.C. § 1441(a) because this district and division embrace the place in which the removed action has been pending.

5.      Pursuant to 28 U.S.C. § 1446, the United States will provide copies of the docket sheet, and all filed processes, pleadings, and orders issued by the 77th Judicial District Court of Limestone County, Texas.

6.      Pursuant to 28 U.S.C. § 1446(d), the United States shall give appropriate notice of its removal and shall serve a copy of this notice of removal to the Plaintiffs and to the clerk of the 77th Judicial District Court of Limestone County, Texas.

7.      Accordingly, United States requests that this lawsuit be placed on the docket of this Court for further proceedings until conclusion and final judgment, as if it had originally been instituted in this Court.

8.      A copy of the Notice of Filing of Notice of Removal (which is being filed with the 77th Judicial District Court of Limestone County, Texas) is attached.  (*See* Exhibit 2).

ACCORDINGLY, the action now pending in State court is removed to this Court for all further proceedings.

Respectfully submitted,

JOHNNY SUTTON
UNITED STATES ATTORNEY

By:

STEVEN B. BASS
Assistant United States Attorney
Florida State Bar No. 767300
816 Congress Avenue, Suite 1000
Austin, Texas 78701
(512)916-5858/Fax(512)916-5854

ATTORNEYS FOR THE
INTERNAL REVENUE SERVICE

## CERTIFICATE OF SERVICE

I, Steven B. Bass, do hereby certify that a true and correct copy of the above and foregoing

**Notice of Removal** has been served by placing same in the United States mail, Certified Return

Receipt Requested postage prepaid, on this the _9th_ day of February 2009, addressed to:

Debbie Echols
11906 Duane Street
Houston, Texas 77047

Rhonda Echols
2738 Troy Drive
Missouri City, Texas 77459

STEVEN B. BASS
Assistant United States Attorney

3

# Exhibit 1

# SERVE

**Citation-General Personal Service in State**
**THE STATE OF TEXAS**

TO: **United States of America, Farm Services Agency, Mark Frazier, Chief, United States Attorney's Office, 800 Franklin Ave, Suite 280, Waco, TX 76701**, Defendant, in the hereinafter styled and numbered cause **28,939-A.**

You are commanded to appear before the 77th District Court of Limestone County, Texas to be held at the courthouse of said County in the City of Groesbeck, Limestone County, Texas, by filing a written answer to the Plaintiff's Petition at or before 10 o'clock A.M. of the Monday next after the expiration of *20 days* after the date copy of which accompanies this citation in cause number **28,939-A, DEBBIE ECHOLS AND RHONDA ECHOLS VS. UNITED STATES OF AMERICA**, filed in said court, on the 22nd day of January, 2009.

The name and address of the attorney for plaintiff, or the address of the plaintiff is:
Debbie Echols; Rhonda Echols, 1906 Duane Street, Houston TX 77047; 2738 Troy DR Missouri City TX, 77459,

**NOTICE TO DEFENDANT:** *"You have been sued. You may employ an attorney. If you or your attorney does not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."*

Issued and given under my hand and seal of said Court at office, this the 23rd day of January, 2009

CAROL JENKINS, District Clerk
P.O. Box 230
Groesbeck, Texas 76642
Limestone County, Texas

By: _____
Deputy Barri Uhl

## OFFICER'S / AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____ 20___ at _____, o'clock ___.M., and executed at (address) _____ in _____ County at _____ o'clock ___.M. on the _____ day of_____, 20___, by delivering to _____ Defendant, in person a true copy of this Citation together with the accompanying __copy(ies) of the _____petition attached thereto and I endorse on said copy of the Citation the date of delivery.

To certify which I affix my hand officially this _____ day of _____ 20___.

SHERIFF OR CONSTABLE

_____COUNTY, TEXAS

Fees: _____

By: _____

CAUSE NO.: 28.939-A          FILED

DEBBIE ECHOLS AND RHONDA ECHOLS,          §          2009 JAN 22  PM 4:36
PLAINTIFFS PRO SE                                      §
                                                       §          IN THE DISTRICT COURT OF
                         V.                            §          CAROL JENKINS
                                                       §          DISTRICT CLERK
UNITED STATES OF AMERICA,                 §          LIMESTONE COUNTY, TEXAS
DEFENDANT                                             §
                                                       §          77th JUDICIAL DISTRICT
                                                       §
                                                       §

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF THE DISTRICT COURT:

Plaintiffs, Debbie Echols and Rhonda Echols, file this original petition to set aside

sale and cancel the trustee's deed on real property against, United States of America,

defendant, for the following reasons:

### A.      Legal Theories

1.      This suit is brought, in part, pursuant to the Tex. Fin. Code Ann. § 392.001 et

seq., Texas Debt Collection Act; and 28 USCA § 2410 et seq., Suit Filed and United States

Named.

2.      A related case has been filed in Federal District Court, Cause No.

W09CA012, under the Quiet Title Act 28 U.S.C.A. § 2409(a).

### B.      Parties

3.      Plaintiff, Debbie Echols, is an individual residing at 11906 Duane Street,

Houston, Harris County, TX 77047-2908.  Plaintiff Rhonda Echols is an individual

residing at 2738 Troy Dr., Missouri City, Ft. Bend County, TX 77459.

4.      Defendant the United States of America, via the Farm Services Agency:  may be served with process at:  Mark Frazier, Chief,  United States Attorney's Office, 800 Franklin Avenue, Suite 280 , Waco, Texas 76701.

5.      Additional process must be served to the defendant at:   the state agency headquarters;  United States Department of Agriculture, Farm Service Agency, P.O. Box 2900, College Station, TX 77841:  and , U.S Department of Justice, Attn:  U.S. Attorney General, 950 Pennsylvania Ave., NW,  Washington,  D.C., 20530-0001.

## C.      Discovery Control Plan

6.      Plaintiffs intend to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190.3 as this the default level and plaintiffs are not seeking monetary relief, but seek rescission of a foreclosure sale for grounds of a voided deed of trust.

## D.      Jurisdiction

7.      Under 28 USCA § 2410(a) the federal government waived sovereign immunity "…the United States may be named a party in any civil action or suit in any district court or in any State court having jurisdiction of the subject matter –

1)      to quiet title to
2)      to foreclose a mortgage or other lien upon
3)      to partition
4)      to condemn, or
5)      of interpleader or in the nature of interpleader with respect to, real or personal property on which the United States has or claims a mortgage or other lien."

8.    The district court has general jurisdiction over this claim of wrongful foreclosure against the United States of America.    When at issue is the existence of and the right to foreclose a lien on real estate as well as the debt, the cause of action is one for the district court.   (Connell v. Schanafelt, 446 S.W. 2d 126; Crowell v. Mickolasch 297 S.W. 2d 234).

### E.    Venue

9.    Venue is mandatory in Limestone County under Texas Civil Practice & Remedies Code section 15.011 because this is a suit to remove encumbrances on real property and recovery of real property.   Limestone County is the county where all of the property is located.

### F.    Facts

10.    On May 19, 1993, Arbra L. Echols and wife, Patsy R. Echols, executed a third party deed of trust to trustee Robert C. Hopper, Acting State Director, Farmers Home Administration[1].  The deed of trust offered 46.196 acres of real property, described in Exhibit A[2], to secure two notes, for Arbra Echols's brother, Carlton M. Echols, Sr. and wife, Irene G. Echols.  The deed of trust, attached as Exhibit B, is recorded in Volume 890, Page 60, and Deed Records of Limestone County, Texas.

11.    The deed of trust secured by the Farm Service Agency was an inferior lien.   A lien, executed on June 18, 1986 to Resource One Federal Credit Union, formerly known as,

---

[1] The Farmer's Home Administration existed from 1946 to 1994.   It is presently known as the Farm Service Agency or FSA.
[2] Hereinafter referred to as "the acreage" or "the property."

Safeway Centex Federal Credit Union is not documented in the deed of trust to the Farmers Home Administration.    The deed of trust is recorded at Volume 148 on page 641, deed of Records of Limestone County, Texas.

12.    In addition, Arbra and Patsy Echols failed to comply with the terms of the deed of trust referenced in paragraph 6 of said deed, by not timely paying taxes on the property.    The taxes on the property also represented a superior lien.    Per the settlement sheet, obtained from Patrick Simmons, an abstract of judgment for $5,703.97 was paid.

13.    Carlton M. Echols, Sr., died on February 20, 1994.    Thereafter the secured notes fell into default.    Per records obtained from the Farm Service Agency, the last voluntary payment was made September 27, 1995.

14.    However, upon default Arbra Echols, grantor of said deed of trust and co-maker Irene Echols entered voluntary liquidation.    As a point of fact, Arbra complied with 7 CFR §1955.15 by voluntarily liquidating the loan through sale of the property.

15.    The liquidation included all security items:    livestock, equipment, and the acreage of Exhibit A.    The final livestock sale was January 6, 1996.    Equipment was sold through public auction on April 13, 1996.

16.    At some time prior to the liquidation of the property, Arbra Echols informed the Farm Service Agency, that the property was about to be foreclosed on by Resource One Federal Credit Union.

17.    The Farm Service Agency contracted with PromiseLand Real Estate to appraise the property.    The company determined the market value of the subject property as of February 23, 1996, to be $15, 707.

~ 4 ~

18.     On April 11, 1996, plaintiffs Debbie Echols and Rhonda Echols, with consideration provided by our father Bonnie Echols, contracted to purchase the property that is the subject of this action.   Earnest money of $500 was offered and accepted.   Patrick Simmons, attorney at law, of the law firm Cannon and Simmons, acted as the escrow agent. His assistant is Martha Lynch.

19.     On April 25, 1996, Bonnie Echols withdrew $15,700, from his bank account to purchase the acreage from Arbra Echols for Rhonda Echols and Debbie Echols.

20.     On April 26, 1996, the property was sold to Rhonda Echols and Debbie Echols.  On this date Arbra and Patsy Echols passed title to plaintiffs via warranty deed.

21.     From about April 1996 through November 1996, Martha Lynch worked with Erasmo Trevino to settle on the Farm Service Agency's rightful portion of the sale proceeds.

22.     Per the settlement statement provided by, attorney Patrick Simmons, funds were to be distributed according to the "Settlement Sheet" incorporated as Exhibit C.

23.     On August 13, 1996, Patrick Simmons wrote a letter to Jack Mauldin, President, Groesbeck Abstract and Title Co., Inc.   The letter advised Jack Mauldin the property was subject to several objections and reservations including:   "Release from Farm Services Administration."   The letter is incorporated as Exhibit D.

24.     At an unknown time, the "abstract of judgment" was released.   On August 20, 1996, Resource One Federal Credit Union released its lien.

25.     On November 8, 1996 Irene Echols filed for bankruptcy and was discharged about March 25, 1997.

26.     On November 14, 1996, plaintiffs received a title policy from Alamo Title Insurance Company, issued by their agent Groesbeck Abstract & Title Co., Inc.

~ 5 ~

27.     The agent warranted in the policy that the property was free of any "defect in lien or encumbrance on the title." The policy is incorporated as Exhibit E.

28.     On this same day, November 14, 1996, plaintiffs warranty deed was recorded in Volume 890, Page 60, Deed Records of Limestone County, Texas. The warranty is incorporated as Exhibit F. Per the property's settlement sheet $4,801.71 was paid on the "second mortgage."

29.     As the presumed owners of the property with good title, Debbie Echols and Rhonda Echols paid the taxes due on the property timely, used the land to graze cattle, used the mesquite trees for barbeques, and otherwise enjoyed the property.

30.     At a time unknown to plaintiffs, defendant sent Irene G. Echols a check for about $4,000. This information was concealed from plaintiffs. It is alleged this was a return of plaintiffs' purchase money.

31.     About August 11, 2005, the Farm Service Agency paid a sum of money to Groesbeck Abstract & Title Co, Inc., "for real estate title services on Carlton M. Echols, Sr., 50-047-467541549." Plaintiffs had absolutely no knowledge of this transaction until they requested documents from the Farm Service Agency, which were received about November 18, 2008.

32.     As a point of fact, per 7 CFR § 1955.18, actions required after acquisition of property, the FSA should have employed the services of a local attorney to clear the title of foreclosure properties. Plaintiffs believe the Farm Service Agency could only employ their title company to meet this requirement.

33.    In a document completed by Nathan Philipello, prior to foreclosure, he falsely represented to others within the agency plaintiffs' property was "abandoned."   This false claim was made on paperwork necessary to approve the foreclosure.

34.    On March 6, 2007, the property was foreclosed on by the Farm Services Agency; the property is now in the possession of Gulledge and Sons, LLC.   The purchase price was $47,100.   Exhibit G.

35.    Plaintiffs were unaware of the defect in the title until the possessor cut off the plaintiffs' locks about late August 2007.

36.    About late August 2007, Plaintiffs' father, Bonnie R. Echols, was confronted about the property by an individual calling himself "Trey Gulledge."   Bonnie Echols called the Limestone County Sheriff's Department, what he believed to be trespassing.   Bonnie Echols then advised plaintiffs not to return to property for any purpose until the matter could be resolved.

37.    After several requests from various parties including the plaintiff, Groesbeck Abstract & Title Co., Inc., has failed to provide any title curative or closing documentation; and seems completely ignorant of plaintiffs' title claim.

38.    All of the named defendants have performed service on the Carlton M. Echols, Sr., account, and have actual knowledge of the events that led to the foreclosure of plaintiffs' property.   And ignored all applicable federal regulations in Title 7.

39.    Plaintiffs did not discover, and should not, in the exercise of reasonable diligence, have discovered, the occurrence of the false act or practices alleged in this petition until less than two years before this suit was filed.

~ 7 ~

40.    Plaintiffs affirmatively plead the inexplicable delay in foreclosure and concealment by multiple parties in a superior position to know the truth and have facts that prove plaintiffs' claim have caused spoliation of evidence.

41.    Arbra L. Echols resides at:   1184 Fm 2705 Mexia, TX 76667; and Irene G. Echols resides at:  4118 Firewood Dr., Dallas, TX  75241.

### Count 1 - Lien Extinguished By Unaccepted Tender of Payment

42.    On or about November 14, 1996, prior to the commencement of this action, plaintiffs tendered to defendant the full amount then due defendant, the sum of $4, 801.71, in lawful money of the United States, in satisfaction of defendant's alleged lien on the property described in the complaint in this action.   Defendant refused to accept such sum by returning plaintiffs' purchase money to a bankrupt, non-party to the transaction, unbeknownst to plaintiffs.   This undisclosed refusal is a violation of plaintiffs' due process.   Defendant made no objection to the known purchaser of property – the plaintiffs - and failed to inform the known purchasers of its actions.   By reason of defendants own refusal, defendants alleged lien is void.

43.    Defendant's refusal to accept their rightful portion of the sale proceeds has caused plaintiffs to lose their property.

### Count 2 - Inadequate Notice of Foreclosure

44.    The government's notice of foreclosure was inadequate.   Plaintiffs have never received a letter certified or via regular mail notifying them of foreclosure.   The Farm Service Agency claims to have sent a certified letter 12/29/2007.

~ 8 ~

45.    However, to the extent the allegedly sent letter does not discuss the return of plaintiffs' purchase money to Irene G. Echols, a bankrupt, non-party to the real estate sale, the notice was inadequate.   The non-disclosure of a material fact known only to the government precluded any chance of a cause of action against the government; and violates plaintiffs' right to due process.

### Count 3 - Unfair Collection Practices

46.    Defendant and substitute trustee Nathan Philipello, is a debt collector on behalf of the United States.   With the consent and knowledge of his supervisors and/or upper management who include:  Erasmo Trevino, Valerie B. Hoover, John Fuston;  Nathan Philipello sold plaintiffs' property to collect on the notes owed by Carlton Echols and co-borrower Irene Echols.

47.    Nathan Philipello's foreclosure sale violated the Texas Debt Collection Act when defendant used unfair or conscionable means to collect a debt.

48.    When Irene Echols became unable to pay and Arbra Echols became sick with lymphoma, both individuals agreed to voluntarily liquidate all loan security.

49.    Having obtained permission to sale from the Farm Service Agency, Arbra Echols sold the heavily indebted property to Rhonda Echols and Debbie Echols.

50.    Plaintiffs' purchase money was used to pay off superior liens.   The escrow officer engaged Ersamo Trevino over a length of time in 1996 regarding the federal government's fair portion of the sale proceeds.

51.    Having agreed to and with full knowledge of the sale, the Farm Service Agency should have used other means to fairly collect their portion of the sale proceeds.

~ 9 ~

52.     Defendant violated the Texas Debt Collection Act when the defendant made, deceptive, or misleading representations to collect a debt.   Defendant sat silent over a period of 11 years, with knowledge of plaintiffs' title claim, recklessly declared plaintiffs' property "abandoned," then foreclosed.   During the defendants' spiteful silence, records from banks and other knowledgeable parties have been destroyed or otherwise become "unavailable." Plaintiffs allege this 11 year wait is an act of evil intentions, concocted to hinder plaintiffs' ability to meet their burden of proof.

53.     Defendant's wrongful foreclosure sale, caused plaintiffs to pay off all superior liens to clear the way for the foreclosure of the governments subordinate lien at plaintiffs' expense.   Plaintiffs have been locked out of their property and are afraid to return.

### Count 4- Unfair Collection Practices

54.     Alternatively or in addition to Count 3, defendant and substitute trustee Nathan Philipello, is a debt collector on behalf of the United States.   With the consent and knowledge of his supervisors and/or upper management who include:  Erasmo Trevino, Valerie B. Hoover, John Fuston; Nathan Philipello sold plaintiffs' property to allegedly collect on the notes owed by Carlton Echols and co-borrower Irene Echols.

55.     Nathan Philipello's foreclosure sale violated the Texas Debt Collection Act when defendant used unfair or unconscionable means to collect a debt.

56.     When Irene Echols became unable to pay and Arbra Echols became sick with lymphoma, both individuals agreed to voluntarily liquidate all loan security.

57.     Having obtained permission to sale from the Farm Service Agency, Arbra Echols sold the heavily indebted property to Rhonda Echols and Debbie Echols.

~ 10 ~

58.    Plaintiffs' purchase money was used to pay off superior liens.   The escrow officer engaged Ersamo Trevino over a length of time in 1996 regarding the federal government's fair portion of the sale proceeds.

59.    The federal government was paid per the settlement sheet.   However at a time unknown to plaintiffs, it is alleged defendant returned the purchase money to Irene G. Echols, with the intent to hinder and delay plaintiffs.   The negligent transfer was concealed from plaintiffs for about 12 years.   The funds were paid to the bankrupt Irene G. Echols, a financially distressed, non-party to the real estate sale, and does not appear on any record of transaction plaintiffs have received from the Farm Service Agency's records, because it was a wrongful act.

60.    Defendant violated the Texas Debt Collection Act when the defendant made negligent representations to collect a debt.   Defendants false claim to not have received any purchase money or not enough purchase money, is due to their abuse of plaintiff.

61.    Furthermore, the defendants sat silent over a period of 11 years, with knowledge of plaintiffs' title claim, interfered with her title policy, recklessly declared plaintiffs' property "abandoned," then foreclosed.   During the defendants' abusive silence, records from banks and other knowledgeable parties have be destroyed or otherwise become "unavailable."   Plaintiffs allege this 11 year wait is an act to hinder plaintiffs' ability to meet their burden of proof.

62.    Defendant's wrongful foreclosure sale, caused plaintiffs to pay off all superior liens to clear the way for the foreclosure of the governments subordinate lien at plaintiffs' expense.   Plaintiffs have been locked out of their property and are afraid to return.

~ 11 ~

63. Defendant's wrongful conduct caused injury to plaintiffs, which resulted in the following damages: loss of land, loss of investment, clouding of title, mental anguish, emotional distress, anxiety, depression, nervous eating, fear for her safety, anger, and humiliation.

### G.    Equitable Relief

64. Plaintiffs seek equitable relief to set the sale aside and void the trustee's deed on grounds listed in the preceding counts. Plaintiffs allege the defendants were paid their rightful portion of the sale proceeds and chose to misappropriate plaintiffs' consideration. Plaintiffs plead they have done equity.

### H.    Limitations.

65. Plaintiffs first learned of the existence of the claim of interest of the United States in such property on or after late August 2007. Prior to such time plaintiffs had no reason to know of the claim of interest of the United States in such property.

66. To the extent that any other period of limitations may apply to plaintiffs' cause of action is based on actions known only to the defendant and concealed from the plaintiffs. The act of returning plaintiffs' purchase money to a bankrupt, non-party, to the real estate sale without plaintiffs' knowledge or consent violated due process. Plaintiffs were able to discover the return of their purchase money in December 2008.

67. Finally the extraordinary 11 year delay in foreclosure by the Farm Service Agency, violated plaintiffs' due process. The government claims in part that this delay was

due to the Pigford class action suit and an agency wide stay on all possible claimants from 1999 to 2005. This stay on activity tolled limitations such similarly sited matters.

## I.    Prayer

68.    Wherefore, plaintiffs Debbie Echols and Rhonda Echols, respectfully pray that defendants be cited to appear and answer in the cause and upon a trial by jury that a judgment be rendered in favor of plaintiffs over and against the defendants on the following respects:

a.    Judgment for title and possession of the land;

b.    Cancellation of the deed executed by Arbra Echols and wife Patsy Echols to Farm Service Agency on May 19, 1993;

c.    The sale by substitute trustee, Nathan Philipello be set aside;

d.    The cloud on plaintiffs' title produced by the recording of the deed be removed and that plaintiffs recover title and possession of this land free from any cloud resting on that title and possession because of the deed; and

e.    All other relief to which the court may deem plaintiffs are entitled.

Dated:        January 21, 2009                    Respectfully,


_Debbie Echols_
Debbie Echols, Plaintiff pro se
11906 Duane Street
Houston, TX  77047-2908
Phone:  (713) 412-7715


_Rhonda J. Echols_
Rhonda  Echols, Plaintiff pro se
2738 Troy Dr.
Missouri City, TX 77459
Phone:  (713) 412-7715

**Exhibit A**

**Legal Description**

**1 Page**

VOL. 957  PAGE 321

EXHIBIT A

PROPERTY:  (including all improvements):

All of that certain 46.198 acres situated in the J.A. Head Survey, Limestone
County, Texas, being all of that called 47 acres tract conveyed from J.G.
Owens et ux to Arbra Echols by deed dated June 15, 1983 and recorded in
Vol. 710, Page 568, Deed Records of Limestone County, Texas, and being
more particularly described by metes and bounds as follows:
   BEGINNING at a 1/2" iron rod set at the base of a 6" cedar fence corner
post for Northeast corner of this tract and Southwest corner of the Curtis
Owens tract;
   THENCE with the East line of this tract and with a fence S.29°45'E.
832.7 ft. to a 1/4" iron rod found at the base of a 6" oak tree and at
a cross fence;  continuing with the East line and with a fence S30°27'E.
831.7 ft. to a 1/2" iron rod found at the base of a 5" post for Southeast
corner of this tract;
   THENCE with the South line of this tract and with a fence S.60°17'W.
796.0 ft. to a 6" cedar post at a cross fence;  continuing S.62°38'W.
156.8 ft. to a 1/2" iron rod set for Southeast corner of the Joe Moore
3 acres tract;
   THENCE N.28°43'W. 361.6 ft. to a 1/2" iron rod set at the Northeast
corner of said Moore tract;
   THENCE S.62°38'W. 361.5 ft to a 1/2" iron rod set at the Northwest
corner of said Moore tract;
   THENCE N.28°43'W. 722.6 ft. to a 6" cedar tree at a bend, continuing
N.29°59'W. to a 1/2" iron rod set at the base of a 6" cedar fence corner
post for Northwest corner of this tract;
   THENCE N.60°00'E. 1286.5 ft. with the North line of this tract and
with a fence to the point of BEGINNING CONTAINING 46.198 acres.

FILED FOR RECORD

96 NOV 14· PM 4: 01

SUE LOWN
COUNTY CLERK
LIMESTONE COUNTY, TX

BY

**Exhibit B**

**Deed of Trust**

**6 Pages**

VOL. 957 PAGE 322

964349
# WARRANTY DEED

| | |
|---|---|
| **THE STATE OF TEXAS** | **§** |
| | **§ KNOW ALL MEN BY THESE PRESENTS:** |
| **COUNTY OF FREESTONE** | **§** |

**DATE:** April 26, 1996

**GRANTORS:** Aubra Echols and wife, Patsy Echols

**GRANTOR'S MAILING ADDRESS:** Rt. 1 Box 118
Mexia, Limestone County, Texas
76667

**GRANTEES:** Rhonda K. Echols and Debbie R. Echols, as their seperate property

**GRANTEES' MAILING ADDRESS:** 11906 Duane St.
Houston, Harris County, Texas 77047

**CONSIDERATION:** Ten Dollars ($10.00) and other good and valuable consideration

**PROPERTY** (including any improvements):

All of that certain 46.198 acres situated in the J.A. Head Survey, Limestone County, Texas, being all of that certain 47 acres tract conveyed from J.G. Owens et ux to Arbra Echols by deed dated June 15, 1983 and recorded in Vol. 710, Pg. 568, Deed Records of Limestone County, Texas and being more particularly described by metes and bounds as follows:
BEGINNING at a 1/2" iron rod set at the base of a 6" cedar fence corner post for Northeast corner of this tract and Southwest corner of the Curtis Owens 50 acres tract;
THENCE with the East line of this tract and, with a fence S. 29° 45' E. 832.7 ft. to a 1/4: iron rod found at the base of a 6" oak tree and at a cross fence; continuing with the East line and with a fence S 30° 27' E. 831.7 ft. to a 1/2" iron rod found at the base of a 5" post for Southeast corner of this tract;
THENCE with the South line of this tract and with a fence S 60° 17' W. 796.0 ft. to 6" cedar post at a cross fence; continuing S. 62° 38' W. 156.8 ft. to a 1/2" iron rod set for Southeast corner of the Joe Moore 3 acres tract;
THENCE N 28° 43' W 361.6 ft. to a 1/2" iron rod set at the Northeast corner of said Moore tract;
Thence S 62° 38' W 361.5 ft. to a 1/2: iron rod set at the Northwest corner of said Moore tract;
THENCE N 28° 43' W. 722.6 ft. to a 6" cedar tree at a bend, continuing N 29° 59' W. to a 1/2" iron rod set at the base of a 6" cedar fence corner post for Northwest corner of this tract;
THENCE N 60° 00' E. 1286.5 ft. with the North line of this tract and with a fence to the point of BEGINNING, containing 46.198 acres.

This conveyance is made subject to all oil, gas and other mineral conveyances which have heretofore been reserved, conveyed or sold.

This conveyance is made subject to all easements as same appear on the ground or of record in the County Clerk's office of Limestone County, Texas.

VOL. 957  PAGE 323

RESERVATIONS FROM AND EXCEPTIONS TO CONVEYANCE AND WARRANTY:

Easements, rights-of-way, and prescriptive rights, whether of record of not; all presently recorded restrictions, reservations, convenants, conditions, oil and gas leases, and mineral severances, and other instruments, other than liens and conveyances, that affect the property.

Any and all restrictions, convenants, reservations, conditions, rights of way easements, leases, licenses, municipal or other governmental laws, rules, codes, regulations, and ordinances, if any, whether recorded or apparent, affect the property.

Grantor, for the consideration and subject to the reservations from and exceptions to conveyance and warranty, grants, sells, and conveys to Grantee the property, together with all and singular the rights and appurtenances thereto in any wise belonging, to have and hold it to Grantee, Grantee's heirs, executors, administrators, successors, or assigns forever. Grantor binds Grantor and Grantor's heirs, executors, administrators, and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, executors, administrators, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the reservations from and exceptions to conveyance and warranty.

When the context requires, singular nouns and pronouns include the plural.


_____
ARBRA ECHOLS

_____
PATSY ECHOLS


STATE OF TEXAS
COUNTY OF LIMESTONE

This instrument was acknowledged before me on the 26th day of April, 1996 by ARBRA ECHOLS and wife, PATSY ECHOLS.


_____
Notary Public, State of Texas

MARTHA CLARK LYNCH
Notary Public
STATE OF TEXAS
My Comm. Exp. 01/28/97


After Recording Return to:        FILED FOR RECORD  Prepared in the Law office of:

Rhonda K Echols          96 NOV 14 PH 4: 01
11906 Duane St                SUE LOWN
Houston, TX 77047        COUNTY CLERK
                                LIMESTONE COUNTY, TX
                                _____ BY —

RECORDED THE 15th OF NOVEMBER A.D., 1996 AT 4 O'CLOCK P .M.
                                      SUE LOWN, COUNTY CLERK
BY: _____ , DEPUTY  LIMESTONE COUNTY, TEXAS

VOL ___ 30 ___ PAGE ___ 60 ___

2402
Prepared by the State Bar of Texas for use by lawyers only.
Revised 10/85; 12/87.
© 1987 by the State Bar of Texas

**MAY 28 1993**

1866

# DEED OF TRUST

Date:  May 19, 1993                                   *Vol. 870 -*

Grantor:  ARBRA L. ECHOLS and wife, PATSY R. ECHOLS

Grantor's Mailing Address (including county):      Route 1, Box 118
                                                   Mexia, Texas 76667
                                                   (Limestone County)


Trustee:  ROBERT C. HOPPER, ACTING STATE DIRECTOR, FARMERS HOME ADMINISTRATION

Trustee's Mailing Address (including county):      Federal Building, 101 S. Main Street
                                                   Temple, Texas 76501 (Bell County)



Beneficiary:   UNITED STATES OF AMERICA ACTING THROUGH THE FARMERS HOME
               ADMINISTATION
Beneficiary's Mailing Address (including county):  P. O. Box 410
                                                   Groesbeck, Texas 76642
                                                   (Limestone County)



Note(s)
   Date:   May 19, 1993

   Amount:  Note #1:  $64,000.00          Note #2:  $15,300.00

   Maker:   Carlton M. Echols, Sr. and wife, Irene G. Echols

   Payee:   United States of America Acting Through the Farmers Home
            Administration
   Final Maturity Date:  Note #1:  5/19/2000;    Note #2:  5/19/1994

   Terms of Payment (optional):   as therein provided




Property (including any improvements):
      Being 46.198 acres of land situated in the J. A. Head Survey,
      Limestone County, Texas, and being fully described in Exhibit "A"
      which is attached hereto and incorporated herein by reference for
      all proper purposes.




Prior Lien(s) (including recording information):

Other Exceptions to Conveyance and Warranty:

All oil, gas and other minerals heretofore reserved, sold or conveyed by predecessors in title and all leases, easements, rights of way and restrictive covenants as same appear of record.

For value received and to secure payment of the note, Grantor conveys the property to Trustee in trust. Grantor warrants and agrees to defend the title to the property. If Grantor performs all the covenants and pays the note according to its terms, this deed of trust shall have no further effect, and Beneficiary shall release it at Grantor's expense.

**Grantor's Obligations**

Grantor agrees to:
1. keep the property in good repair and condition;
2. pay all taxes and assessments on the property when due;
3. preserve the lien's priority as it is established in this deed of trust;
4. maintain, in a form acceptable to Beneficiary, an insurance policy that:
   a. covers all improvements for their full insurable value as determined when the policy is issued and renewed, unless Beneficiary approves a smaller amount in writing;
   b. contains an 80% coinsurance clause;
   c. provides fire and extended coverage, including windstorm coverage;
   d. protects Beneficiary with a standard mortgage clause;
   e. provides flood insurance at any time the property is in a flood hazard area; and
   f. contains such other coverage as Beneficiary may reasonably require;
5. comply at all times with the requirements of the 80% coinsurance clause;
6. deliver the insurance policy to Beneficiary and deliver renewals to Beneficiary at least ten days before expiration;
7. keep any buildings occupied as required by the insurance policy; and
8. if this is not a first lien, pay all prior lien notes that Grantor is personally liable to pay and abide by all prior lien instruments.

**Beneficiary's Rights**

1. Beneficiary may appoint in writing a substitute or successor trustee, succeeding to all rights and responsibilities of Trustee.
2. If the proceeds of the note are used to pay any debt secured by prior liens, Beneficiary is subrogated to all of the rights and liens of the holders of any debt so paid.
3. Beneficiary may apply any proceeds received under the insurance policy either to reduce the note or to repair or replace damaged or destroyed improvements covered by the policy.
4. If Grantor fails to perform any of Grantor's obligations, Beneficiary may perform those obligations and be reimbursed by Grantor on demand at the place where the note is payable for any sums so paid, including attorney's fees, plus interest on those sums from the dates of payment at the rate stated in the note for matured, unpaid amounts. The sum to be reimbursed shall be secured by this deed of trust.
5. If Grantor defaults on the note or fails to perform any of Grantor's obligations or if default occurs on a prior lien note or other instrument, and the default continues after Beneficiary gives Grantor notice of the default and the time within which it must be cured, as may be required by law or by written agreement, then Beneficiary may:
   a. declare the unpaid principal balance and earned interest on the note immediately due;
   b. request Trustee to foreclose this lien, in which case Beneficiary or Beneficiary's agent shall give notice of the foreclosure sale as provided by the Texas Property Code as then amended; and
   c. purchase the property at any foreclosure sale by offering the highest bid and then have the bid credited on the note.

**Trustee's Duties**

If requested by Beneficiary to foreclose this lien, Trustee shall:
1. either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then amended;
2. sell and convey all or part of the property to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to other exceptions to conveyance and warranty; and
3. from the proceeds of the sale, pay, in this order:
   a. expenses of foreclosure, including a commission to Trustee of 5% of the bid;
   b. to Beneficiary, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;
   c. any amounts required by law to be paid before payment to Grantor; and
   d. to Grantor, any balance.

VOL 90 PAGE 62

**General Provisions**

1.  If any of the property is sold under this deed of trust, Grantor shall immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor shall become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2.  Recitals in any Trustee's deed conveying the property will be presumed to be true.

3.  Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4.  This lien shall remain superior to liens later created even if the time of payment of all or part of the note is extended or part of the property is released.

5.  If any portion of the note cannot be lawfully secured by this deed of trust, payments shall be applied first to discharge that portion.

6.  Grantor assigns to Beneficiary all sums payable to or received by Grantor from condemnation of all or part of the property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the property. After deducting any expenses incurred, including attorney's fees, Beneficiary may release any remaining sums to Grantor or apply such sums to reduce the note. Beneficiary shall not be liable for failure to collect or to exercise diligence in collecting any such sums.

7.  Grantor assigns to Beneficiary absolutely, not only as collateral, all present and future rent and other income and receipts from the property. Leases are not assigned. Grantor warrants the validity and enforceability of the assignment. Grantor may as Beneficiary's licensee collect rent and other income and receipts as long as Grantor is not in default under the note or this deed of trust. Grantor will apply all rent and other income and receipts to payment of the note and performance of this deed of trust, but if the rent and other income and receipts exceed the amount due under the note and deed of trust, Grantor may retain the excess. If Grantor defaults in payment of the note or performance of this deed of trust, Beneficiary may terminate Grantor's license to collect and then as Grantor's agent may rent the property if it is vacant and collect all rent and other income and receipts. Beneficiary neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the property. Beneficiary may exercise Beneficiary's rights and remedies under this paragraph without taking possession of the property. Beneficiary shall apply all rent and other income and receipts collected under this paragraph first to expenses incurred in exercising Beneficiary's rights and remedies and then to Grantor's obligations under the note and this deed of trust in the order determined by Beneficiary. Beneficiary is not required to act under this paragraph, and acting under this paragraph does not waive any of Beneficiary's other rights or remedies. If Grantor becomes a voluntary or involuntary bankrupt, Beneficiary's filing a proof of claim in bankruptcy will be tantamount to the appointment of a receiver under Texas law.

8.  Interest on the debt secured by this deed of trust shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount shall be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

9.  When the context requires, singular nouns and pronouns include the plural.

10.  The term *note* includes all sums secured by this deed of trust.

11.  This deed of trust shall bind, inure to the benefit of, and be exercised by successors in interest of all parties.

12.  If Grantor and Maker are not the same person, the term *Grantor* shall include Maker.

13.  Grantor represents that this deed of trust and the note are given for the following purposes:

    As additional security to secure the payment of the hereinabove described promissory notes.

_____
Arbra L. Echols

_____
Patsy R. Echols

VOL 890 PAGE 63

# EXHIBIT "A"

**46.198 ACRES TRACT**
**J. A. HEAD SURVEY**
**LIMESTONE COUNTY, TEXAS**
**OWNER: ARBRA ECHOLS, Vol 710,Pg,568, L.C.D.R**

All of that certain 46.198 acres tract situated in the J.A. Head Survey, Limestone County, Texas, being all of that called 47 acres tract conveyed from J.G. Owens et ux to Arbra Echols by deed dated June 15, 1983 and recorded in Vol. 710, Pg. 568, Deed Records of Limestone County, Texas and being more particularly described by metes and bounds as follows:

BEGINNING at a 1/2" iron rod set at the base of a 6" cedar fence corner post for Northeast corner of this tract and Southwest corner of the Curtis Owens 50 acres tract;

THENCE with the East line of this tract and with a fence S.29°45'E. 832.7 ft. to a 1/4" iron rod found at the base of a 6" oak tree and at a cross fence; continuing with the East line and with a fence S30°27'E. 831.7 ft. to a 1/2" iron rod found at the base of a 5' post for Southeast corner of this tract;

THENCE with the South line of this tract and with a fence S.60°17'W. 796.0 ft. to 6"cedar post at a cross fence; continuing S.62°38'W. 156.8 ft. to a 1/2" iron rod set for Southeast corner of the Joe Moore 3 acres tract;

THENCE N.28°43'W. 361.5 ft. to a 1/2" iron rod set at Northeast corner of said Moore tract;

THENCE S.62°38'W. 361.5 ft. to a 1/2" iron rod set at Northwest corner of said Moore tract;

THENCE N.28°43'W. 722.6 ft. to a 6" cedar tree at a bend continuing N.29°59'W. to a 1/2" iron rod set at the base of a 6" cedar fence corner post for Northwest corner of this tract;

THENCE N.60°00'E. 1286.5 ft. with the North line of this tract and with a fence to the point of BEGINNING, containing 46.198 acres.

VOL 890 PAGE 64

(Acknowledgment)

STATE OF TEXAS
COUNTY OF    LIMESTONE

This instrument was acknowledged before me on the                     day of        May        , 19 93
by      Arbra L. Echols and wife, Patsy R. Echols.

Jewelene K. Walton
Notary Public, State of Texas
Notary's name (printed):

Notary's commission expires: 9-21-93

[SEAL: JEWELENE K. WALTON / Notary Public / STATE OF TEXAS / My Comm. Exp. 09/21/93]

(Corporate Acknowledgment)

STATE OF TEXAS
COUNTY OF

This instrument was acknowledged before me on the                     day of                     , 19
by
of
a                                  corporation, on behalf of said corporation.

_____
Notary Public, State of Texas
Notary's name (printed):

Notary's commission expires:

AFTER RECORDING RETURN TO:

⚡ Farmers Home Administration
P. O. Box 410
Groesbeck, Texas 76642

PREPARED IN THE LAW OFFICE OF:

Prepared in the law office of Bobby Reed,
P. O. Box 349, Groesbeck, Texas 76642,from information
furnished by the parties and no examination has been
made and no opinion has been given by the firm pre-
paring this instrument as to the title to or the descrip-
tion of the property involved.

THE STATE OF TEXAS

COUNTY OF LIMESTONE

I, **SUE LOWN**, CLERK OF THE COUNTY COURT OF LIMESTONE COUNTY, DO HEREBY CERTIFY THAT THE FOREGOING INSTRUMENT, WITH ITS CERTIFICATE OF AUTHENTICATION, WAS FILED IN MY OFFICE THE 19th DAY OF May_____,199 3_, AT 3:27 O'CLOCK P._M., AND DULY RECORDED THE 20th DAY OF May_____,199 3_; AT 4:00 O'CLOCK P._M., IN REAL PROPERTY RECORD OF SAID COUNTY, IN VOLUME 850_, PAGE 60_.

**WITNESS MY HAND** AND THE SEAL OF THE COUNTY COURT OF SAID COUNTY, AT MY OFFICE IN GROESBECK, TEXAS THE DAY AND YEAR LAST WRITTEN.

SUE LOWN

BY _____, DEPUTY CLERK
COUNTY COURT, LIMESTONE COUNTY, TEXAS

**Exhibit C**

**Settlement Sheet**

**1 Page**

SETTLEMENT SHEET

Sellers:     Arbra Echols and wife, Patsy Echols
             Rt. 1 Box 118
             Mexia, Tx.  76667


Buyers:      Rhonda K. Echols and Debbie R. Echols
             11906 Duane St.
             Houston, Tx.  77047


Property:    46.198 acres in the J.A. Head Survey, Limestone County,
             Texas


Sales Price:    $15,700.00 Cash at closing

------------------------------------------------------------------
SUMMARY OF BUYERS TRANSACTION:

Cash Due From Buyer at closing:                    $15,700.00
------------------------------------------------------------------

SUMMARY OF SELLERS TRANSACTION:

Gross Amount Due to Seller:                        $15,700.00

Payoff of first mortgage                         -  3,841.96
Payoff of second mortgage                        -  4,801.71
Payoff of Abstract of Judgement                  -  5,703.97
Prorated taxes                                   -    425.36
Closing Costs & attorney fees                    -    600.00
Title Insurance                                  -    327.00
                                                   ------------

     Due to Seller at Closing                       -0-


_____          _____
Rhonda K. Echols                          Arbra Echols
_____          _____
Debbie R. Echols                          Patsy Echols


This is a true and accurate account of this transaction.  I have
caused or will cause the funds to be disbursed in accordance with
this statement.
                                _____

**Exhibit D**

**Simmons' Letter**

**2 Page**

## CANNON AND SIMMONS
### ATTORNEYS AT LAW

JOE B. CANNON
PATRICK H. SIMMONS

PROFESSIONAL BUILDING
P. O. BOX 270
MEXIA, TEXAS 76667
817/562-5574

P. O. BOX 109
GROESBECK, TEXAS 76642
817/729-3221
FAX: 817/729-8121

August 13, 1996

Jack Mauldin
Groesbeck Abstract & Title
Groesbeck, Texas  76642

Re:  46.198 acres, J.A. Head Survey, Limestone County, Texas

Dear Jack:

This will advise you that I have examined the title to the property
described above as reflected by your title run dated July 26, 1996,
GF#6525.  In my opinion, the fee simple title to the property is
vested in Arbra Echols and wife, Patsy Ruth Echols  subject to the
following objections and reservations:

   1.  All oil, gas and other minerals heretofore reserved or
   conveyed by predecessors in title, together with all rights
   pertaining thereto.

   2.  Any visible and apparent easements or rights-of-way over
   and across the subject property and easements and restrictions
   of record.

   3.  Taxes to taxing agencies in whose boundaries this property
   lies subsequent to the year 1996.  Receipts are attached
   hereto  for  all  delinquent  taxes.

   4.  Release of Abstract of Judgment, said judgment recorded in
   Vol. 888 Page  857, Limestone County Deed Records.  A receipt
   for payment of said judgment is attached hereto.

   5.  Release from Resource One for Safeway Federal Credit
   Union.

   6.  Release from Farm Services Administration.

   7.  My title opinion is based solely upon my examination of
   the instruments on file in the county courthouse of Limestone

EXHIBIT  D  PG  1

County, Texas, and I make no statement with regard to the location of the property, the boundaries thereof or the rights of the parties in possession, if any.

8.  The purchasers should execute a Waiver of Inspection and the Sellers an Affidavit as to Debts and Liens.

I am of the opinion that good and marketable title to the subject property is vested in Arbra Echols and wife, Patsy Echols, subject to the above objections.

The Purchasers are Rhonda K. Echols and Debbie R. Echols and the purchase price is $15,700.00.  Based on the above and foregoing, please issue a title commitment letter to Rhonda K. Echols and Debbie R. Echols.

Thank you.

Sincerely yours,

PATRICK H. SIMMONS

PHS/mcl
encl.

EXHIBIT  D  PG  2

**Exhibit E**

**Title Policy**

**7 Pages**

A10191(1/93)

## OWNER POLICY OF TITLE INSURANCE

### Issued by



459591

# Alamo Title Insurance
# of Texas

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, ALAMO TITLE INSURANCE OF TEXAS, a Texas corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;

2. Any defect in or lien or encumbrance on the title;

3. Any statutory or constitutional mechanic's, contractor's, or materialman's lien for labor or material having its inception on or before Date of Policy;

4. Lack of a right of access to and from the land;

5. Lack of good and indefeasible title.

The company also will pay the costs, attorneys' fees and expenses incurred in defense of the title, as insured, but only to the extent provided in the Conditions and Stipulations.

ALAMO TITLE INSURANCE OF TEXAS

By: _Timothy Redding_
Secretary

By: _Don H. Still_
President

GROESBECK ABSTRACT &
TITLE CO., INC.
118 S. Ellis • P.O. Box 127
Groesbeck, Texas 76642
(817) 729-3806   FAX (817) 729-5655

Agent for

Alamo Title Insurance
of Texas

Effective January 1, 1993

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses that arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking that has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy;
   (e) resulting in loss or damage that would not have been sustained if the insured claimant had paid value for the estate or interest insured by this Policy.

4. The refusal of any person to purchase, lease or lend money on the estate or interest covered hereby in the land described in Schedule A because of unmarketability of the title.

5. Any claim, which arises out of the transaction vesting in the person named in paragraph 3 of Schedule A the estate or interest insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or other state or federal creditors' rights laws that is based on either (i) the transaction creating the estate or interest insured by this Policy being deemed a fraudulent conveyance or fraudulent transfer or a voidable distribution or voidable dividend or (ii) the subordination or recharacterization of the estate or interest insured by this Policy as a result of the application of the doctrine of equitable subordination or (iii) the transaction creating the estate or interest insured by this Policy being deemed a preferential transfer except where the preferential transfer results from the failure of the Company or its issuing agent to timely file for record the instrument of transfer to the insured after delivery or the failure of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

## CONDITIONS AND STIPULATIONS

1. **DEFINITION OF TERMS.**
   The following terms when used in this policy mean:
   (a) "insured": the insured named in Schedule A, and, subject to any rights or defenses the company would have had against the named insured, those who succeed to the interest of the named insured by operation of law as distinguished from purchase including, but not limited to, heirs, distributees, devisees, survivors, personal representatives, next of kin, or corporate, partnership or fiduciary successors, and specifically, without limitation, the following:
   (i) the successors in interest to a corporation resulting from merger or consolidation or the distribution of the assets of the corporation upon partial or complete liquidation;
   (ii) the partnership successors in interest to a general or limited partnership which dissolves but does not terminate;
   (iii) the successors in interest to a general or limited partnership resulting from the distribution of the assets of the general or limited partnership upon partial or complete liquidation;
   (iv) the successors in interest to a joint venture resulting from the distribution of the assets of the joint venture upon partial or complete liquidation;
   (v) the successor or substitute trustee(s) of a trustee named in a written trust instrument; or
   (vi) the successors in interest to a trustee or trust resulting from the distribution of all or part of the assets of the trust to the beneficiaries thereof.
   (b) "insured claimant": an insured claiming loss or damage.
   (c) "knowledge" or "known": actual knowledge, not constructive knowledge or notice that may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.
   (d) "land": the land described or referred to in Schedule A, and improvements affixed thereto that by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.
   (e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.
   (f) "public records": records established under state statutes as Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" also shall include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.
   (g) "access": legal right of access to the land and not the physical condition of access. The coverage provided as to access does not assure the adequacy of access for the use intended.

2. **CONTINUATION OF INSURANCE AFTER CONVEYANCE OF TITLE.**
   The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) and indebtedness secured by a purchase money mortgage given to the insured.

3. **NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.**
   The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, or (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest that is adverse to the title to the estate or interest, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only the extent of the prejudice.
   When, after the date of the policy, the insured notifies the Company as required herein of a lien, encumbrance, adverse claim or other defect in title to the estate or interest in the land insured by this policy that is not excluded or excepted from the coverage of this policy, the Company shall promptly investigate the charge to determine whether the lien, encumbrance, adverse claim or defect is valid and not barred by law or statute. The Company shall notify the insured in writing, within a reasonable time, of its determination as to the validity or invalidity of the insured's claim or charge under the policy. If the Company concludes that the lien, encumbrance, adverse claim or defect is not covered by this policy, or was otherwise addressed in the closing of the transaction in connection with which this policy was issued, the Company shall specifically advise the insured of the reasons for its determination. If the Company concludes that the lien, encumbrance, adverse claim or defect is valid, the Company shall take one of the following actions: (i) institute the necessary proceedings to clear the lien, encumbrance, adverse claim or defect from the title to the estate as insured; (ii) indemnify the insured as provided in this policy; (iii) upon payment of appropriate premium and charges therefor, issue to the insured claimant or to a subsequent owner, mortgagee or holder of the estate or interest in the land insured by this policy, a policy of title insurance without exception for the lien, encumbrance, adverse claim or defect, said policy to be in an amount equal to the current value of the property or, if a mortgagee policy, the amount of the loan; (iv) indemnify another title insurance company in connection with its issuance of a policy(ies) of title insurance without exception for the lien, encumbrance, adverse claim or defect; (v) secure a release or other document discharging the lien, encumbrance, adverse claim or defect; or (vi) undertake a combination of (i) through (v) herein.

## ALAMO TITLE INSURANCE OF TEXAS
### SCHEDULE A

GF No. **6525**
Date of Policy: **NOVEMBER 14, 1996**
Issued with No.:

Owner Policy No.: **459591**
Amount of Insurance: **$15,700.00**
Premium: **$327.00**

1. Name of Insured:

   **RHONDA K. ECHOLS and DEBBIE R. ECHOLS**

2. We insure your interest in the land covered by this Policy is:

   **FEE SIMPLE**

3. Legal description of land:

   **BEING 46.198 acres, more or less, out of the J.A. Head Survey, Limestone County, Texas, and being more particularly described in Exhibit "A" attached hereto and made a part hereof for all purposes.**

**Groesbeck Abstract and Title Co., Inc.**
Agent

This policy is not valid unless duly countersigned by agent.

COUNTERSIGNED:
on and as of the date hereof

By: *Faye Morford*

## ALAMO TITLE INSURANCE OF TEXAS
### SCHEDULE B

GF No.: **6525**
Policy No.: **459591**

### EXCEPTIONS

We do not cover loss, costs, attorneys' fees and expenses resulting from:

1. The following restrictive covenants of record itemized below (We must either insert specific recording data or delete this exception.):

**EXCEPTION NUMBER 1 IS HEREBY DELETED.**

2. Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or protrusions, or any overlapping improvements.

3. Homestead or community property or survivorship rights, if any, of any spouse of any insured.

4. Any titles or rights asserted by anyone, including, but not limited to, persons, the public, corporations, governments or other entities,
   a. to tidelands, or lands comprising the shores or beds of navigable or perennial rivers and streams, lakes, bays, gulfs or oceans, or
   b. to lands beyond the line of the harbor or bulkhead lines as established or changed by any government, or
   c. to filled-in lands, or artificial islands, or
   d. to statutory water rights, including riparian rights, or
   e. to the area extending from the line of mean low tide to the line of vegetation, or the right of access to that area or easement along and across that area.

5. Standby fees, taxes and assessments by any taxing authority for the year 19 **96** and subsequent years, and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership.

6. The following matters and all terms of the documents creating or offering evidence of the matters (We must insert matters or delete this exception):

   (a). Item #14 (Arbitration) of the Stipulations and Conditions is hereby deleted.

   (b). Any visible and apparent easements or rights-of-way over and across the subject property, the existence of which does not appear of record.

   (c). Any portion of subject property lying within the boundaries of a public or private roadway whether dedicated or not.

   (d). Rights of Parties in Possession.

   (e). All oil, gas and other minerals heretofore reserved or conveyed by predecessors in title, together with all rights pertaining thereto.

All of that certain 46.198 acres situated in the J.A. Head Survey, Limestone County, Texas, being all of that certain 47 acres tract conveyed from J.G. Owens et ux to Arbra Echols by deed dated June 15, 1983 and recorded in Vol. 710, Pg. 568, Deed Records of Limestone County, Texas and being more particularly described by metes and bounds as follows:

BEGINNING at a 1/2" iron rod set at the base of a 6" cedar fence corner post for Northeast corner of this tract and Southwest corner of the Curtis Owens 50 acres tract;

THENCE with the East line of this tract and, with a fence S. 29° 45' E. 832.7 ft. to a 1/4: iron rod found at the base of a 6" oak tree and at a cross fence; continuing with the East line and with a fence S 30° 27' E. 831.7 ft. to a 1/2" iron rod found at the base of a 5" post for Southeast corner of this tract;

THENCE with the South line of this tract and with a fence S 60° 17' W. 796.0 ft. to 6" cedar post at a cross fence; continuing S. 62° 38' W. 156.8 ft. to a 1/2" iron rod set for Southeast corner of the Joe Moore 3 acres tract;

THENCE N 28° 43' W 361.6 ft. to a 1/2" iron rod set at the Northeast corner of said Moore tract;

Thence S 62° 38' W 361.5 ft. to a 1/2: iron rod set at the Northwest corner of said Moore tract;

THENCE N 28° 43' W. 722.6 ft. to a 6" cedar tree at a bend, continuing N 29° 59' W. to a 1/2" iron rod set at the base of a 6" cedar fence corner post for Northwest corner of this tract;

THENCE N 60° 00' E. 1286.5 ft. with the North line of this tract and with a fence to the point of BEGINNING, containing 46.198 acres.

# Exhibit A

**CONDITIONS AND STIPULATIONS - Continued**

**4.  DEFENSE AND PROSECUTION OF ACTIONS: DUTY OF INSURED CLAIMANT TO COOPERATE.**

(a)  Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action that allege matters not insured against by this policy.

(b)  The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the title to the estate or interest, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c)  Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d)  In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

**5.  PROOF OF LOSS OR DAMAGE.**

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 91 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss of damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph shall terminate any liability of the Company under this policy as to that claim.

**6.  OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.**

In case of a claim under this policy, the Company shall have the following additional options:

(a)  **To Pay or Tender Payment of the Amount of Insurance.**

To pay or tender payment of the amount of insurance under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay.

Upon the exercise by the Company of this option, all liability and obligations to the insured under this policy, other than to make the payment required, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

(b)  **To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.**

(i)  to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii)  to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs (b)(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

**7.  DETERMINATION, EXTENT OF LIABILITY AND COINSURANCE.**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a)  The liability of the Company under this policy shall not exceed the least of:

(i)  the Amount of Insurance stated in Schedule A;

(ii)  the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy at the date the insured claimant is required to furnish a proof of loss or damage in accordance with Section 5 of these Conditions and Stipulations.

(b)  In the event the Amount of Insurance stated in Schedule A at the Date of Policy is less than 80 percent of the value of the insured estate or interest or the full consideration paid for the land, whichever is less, or if subsequent to the Date of Policy an improvement is erected on the land which increases the value of the insured estate or interest by at least 20 percent over the Amount of Insurance stated in Schedule A, then this Policy is subject to the following:

(i)  where no subsequent improvement has been made, as to any partial loss, the Company shall only pay the loss pro rata in the proportion that the amount of insurance at Date of Policy bears to the total value of the insured estate or interest at Date of Policy; or

(ii)  where a subsequent improvement has been made, as to any partial loss, the Company shall only pay the loss pro rata in the proportion that 120 percent of the Amount of Insurance stated in Schedule A bears to the sum of the Amount of Insurance stated in Schedule A and the amount expended for the improvement.

The provisions of this paragraph shall not apply to costs, attorneys' fees and expenses for which the Company is liable under this policy, and shall only apply to that portion of any loss which exceeds, in the aggregate, 10 percent of the Amount of Insurance stated in Schedule A.

(c)  The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

**8.  APPORTIONMENT**

If the land described in Schedule A consists of two or more parcels that are not used as a single site, and a loss is established affecting one or more of the parcels but not all, the loss shall be computed and settled on a pro rata basis as if the amount of insurance under this policy was divided pro rata as to the value on Date of Policy of each separate parcel to the whole, exclusive of any improvements made subsequent to Date of Policy, unless a liability or value has otherwise been agreed upon as to each parcel by the Company and the insured at the time of the issuance of this policy and shown by an express statement or by an endorsement attached to this policy.

**9.  LIMITATION OF LIABILITY.**

(a)  If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, all as insured, or takes action in accordance with Section 3 or Section 6, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b)  In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title as insured.

(c)  The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

**10.  REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.**

All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto.

(Continued on Reverse Side of Page)

**CONDITIONS AND STIPULATIONS - Continued**

**11. LIABILITY NONCUMULATIVE.**

It is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy to the insured owner.

**12. PAYMENT OF LOSS.**

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

**13. SUBROGATION UPON PAYMENT OR SETTLEMENT.**

(a) **The Company's Right of Subrogation.**

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies that the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to these rights and remedies in the proportion that the Company's payment bears to the whole amount of the loss.

If loss should result from any act of the insured claimant, as stated above, that act shall not void this policy, but the Company, in that event, shall be required to pay only that part of any losses insured against by this policy that shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(b) **The Company's Rights Against Non-insured Obligors.**

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments that provide for subrogation rights by reason of this policy.

**14. ARBITRATION.**

Unless prohibited by applicable law or unless this arbitration section is deleted by specific provision in Schedule B of this policy, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less SHALL BE arbitrated at the request of either the Company or the insured, unless the insured is an individual person (as distinguished from a corporation, trust, partnership, association or other legal entity). All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

**15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.**

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arise out of the status of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, and Assistant Secretary, or validating officer or authorized signatory of the Company.

**16. SEVERABILITY.**

In the event any provision of the policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision, and all other provisions shall remain in full force and effect.

**17. NOTICES, WHERE SENT.**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at 10010 San Pedro, Suite 800, San Antonio, Texas 78216-3895.

**COMPLAINT NOTICE**

Should any dispute arise about your premium or about a claim that you have filed, contact the agent or write to the Company that issued the policy. If the problem is not resolved, you also may write the Texas Department of Insurance, P.O. Box 149091, Austin, TX 78714-9091, Fax No. (512) 475-1771. This notice of complaint procedure is for information only and does not become a part of or condition of this policy.

# Owner Policy of Title Insurance

## Alamo Title Insurance of Texas

10010 San Pedro, Suite 800
San Antonio, Texas 78216-3895
1-800-292-5320

**Exhibit F**

**Warranty Deed**

**2 Pages**

**Exhibit G**

**Deed By Substitute Trustee**

**5 Pages**

Doc
00071544

Bk
RP

Vol
1235

Pg
588

**NOTICE OF CONFIDENTIALITY RIGHTS:**
IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE
FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR
RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR
YOUR DRIVER'S LICENSE NUMBER.

## DEED BY SUBSTITUTE TRUSTEE

STATE OF TEXAS          )

COUNTY OF LIMESTONE )

WHEREAS on May 19, 1993, Arbra L. Echols and wife, Patsy R.
Echols, (herein called "Grantor") executed a certain deed of
trust conveying to the State Director of the Farmers Home
Administration for the State of Texas, and his successors in
office as State Director or Acting State Director, Trustee,
certain property hereinafter described for the purpose of
securing and enforcing the payment to the United States of
America of a certain note and other indebtedness as more fully
described and provided for in said deed of trust which is
recorded in Volume 890, Page 60, Real Property Records, Limestone
County, Texas, reference to which deed of trust and the record
thereof is hereby made for all purposes; and

WHEREAS the said Trustee named in said deed of trust was
unable to act as Trustee in said capacity; and

WHEREAS the United States of America, Beneficiary in said
deed of trust, pursuant to and in accordance with the powers
embodied in said deed of trust, did duly appoint the undersigned
to serve as Substitute Trustee, and I, the duly named Substitute
Trustee, at the request of the United States of America, the
holder of said deed of trust, there having been default in the

payment of the said note, after the posting of written notice

thereof for twenty-one days prior to the date of sale at the

Courthouse door in Groesbeck, Limestone County, Texas, in which

county said real estate is situated, after serving written notice

of the proposed sale by certified mail on each debtor obligated

to pay such debt and on any persons shown of record to have an

interest inferior to the interest of the United States of America

in the property secured by said deed of trust, which notice

stated the sale would be held at 10:00 a.m., or within three

hours thereafter, on March 6, 2007, at the front door of the

courthouse, 200 West State Street, Groesbeck, Texas in said

county, and after filing said notice of sale for record with the

County Clerk of said county, did offer for sale at 10:04 a.m. at

public auction on the first Tuesday in March 2007, the same being

the 6th day of said month, at the front door of the courthouse,

200 West State Street, Groesbeck, Texas in said County, that

certain property, together with improvements thereon, with the

rights, privileges and appurtenances thereto belonging, situated

in said County, more particularly described as follows:

> All of that certain 46.198 acres situated in the J. A.
> Head Survey, Limestone County, Texas, being all of that
> certain 47 acres tract conveyed from J. G. Owens et ux.
> to Arbra Echols by deed dated June 15, 1983 and
> recorded in Vol. 710, Pg. 568, Deed Records of
> Limestone County, Texas and being more particularly
> described by metes and bounds as follows:
>
> BEGINNING at a 1/2" iron rod set at the base of a 6"
> cedar fence corner post for northeast corner of this
> tract and southwest corner of the Curtis Owens 50 acres
> tract;

2

THENCE with the east line of this tract and, with a
fence S. 29° 45' E. 832.7 ft. to a 1/4" iron rod found
at the base of a 6" oak tree and at a cross fence;
continuing with the east line and with a fence S 30°
27' E. 831.7 ft. to a 1/2" iron rod found at the base
of a 5" post for southeast corner of this tract;
THENCE with the south line of this tract and with a
fence S 60° 17' W. 796.0 ft. to 6" cedar post at a
cross fence; continuing S 62° 38' W. 156.8 ft. to a
1/2" iron rod set for southeast corner of the Joe Moore
3 acres tract;
THENCE N 28° 43' W 361.6 ft. to a 1/2" iron rod set at
the northeast corner of said Moore tract;
THENCE S 62° 38' W 361.5 ft. to a 1/2" iron rod set at
the northwest corner of said Moore tract;
THENCE N 28° 43' W 722.6 ft. to a 6" cedar tree at a
bend, continuing N 29° 59' W. 59 to a 1/2" iron rod set
at the base of a 6" cedar fence corner post for
northwest corner of this tract;
THENCE N 60° 00' E 1286.5 ft. with the north line of
this tract and with a fence to the point of beginning,
containing 46.198 acres.

SUBJECT, HOWEVER, TO THE FOLLOWING:

1.  Any discrepancies, conflicts, or shortages in area
or boundary lines, or any encroachments, or any
overlapping of improvements.

2.  Reservations and/or conveyance of all oil, gas and
other minerals by predecessors in title.

3.  Visible and apparent easements on or across the
property herein described in which a survey and/or
physical inspection would disclose.

4.  Any portion of the above-described property
situated within a public road or highway.

5.  All matters of record affecting title to this
property including easements, reservations,
restrictions and exceptions.

6.  Unpaid ad valorem taxes.

WHEREUPON, the said tract of land was struck off to Gulledge

and Sons LLC, a Texas limited liability company, 4125 White Porch

3

Doc        Bk      Vol     Pg
00071544  RP      1235    591

Road, Plano, Texas 75024, for the sum of $47,200.00, being the
highest bid therefor.

NOW, THEREFORE, for and in consideration of the premises and
of the sum of $47,200.00, (which amount is to be applied as a
credit on the note and other indebtedness hereinabove referred to
owing to the United States of America), the receipt of which is
hereby acknowledged, I, the said Substitute Trustee, by virtue of
the authority conferred upon me in writing by the said
Beneficiary in said deed of trust as more fully shown by
instrument dated January 8, 2007, recorded in Volume 1230, Page
660, Real Property Records, Limestone County, Texas, have
BARGAINED, SOLD AND CONVEYED and by these presents do BARGAIN,
SELL AND CONVEY unto Gulledge and Sons LLC, its successors and
assigns, forever, the above-described land and improvements
thereon, together with all and singular the rights, privileges
and appurtenances to the same in any manner belonging.

TO HAVE AND TO HOLD said property unto the said Gulledge and
Sons LLC, its successors and assigns, forever, in fee simple, and
I, the said Substitute Trustee, as aforesaid, by virtue of the
authority vested in me in said deed of trust, do hereby bind and
obligate the said Grantor, their heirs and assigns, to forever
warrant and defend the right and title of said property to
Gulledge and Sons LLC, its successors and assigns, against every

4

Doc Bk Vol Ps
00071544 RP 1235 592

person whomsoever lawfully claiming or to claim the same or any

part thereof.

Dated this 6th day of March 2007.

Nathan P. Philipello
Substitute Trustee

STATE OF TEXAS          )

COUNTY OF LIMESTONE )

This instrument was acknowledged before me on  3/16/07  ,

by Nathan P. Philipello, as Substitute Trustee.



Notary Public, State of Texas

(SEAL)

Filed for Record in:
Limestone County

On: Mar 28,2007 at 10:28A

By:Diane Tilles

STATE OF TEXAS                    COUNTY OF LIMESTONE
     I hereby certify that this instrument was
filed on the date and time stamped hereon by me and
was duly recorded in the volume and page of the
named records of: Limestone County
as stamped hereon by me.

Mar 28,2007

Peggy Beck, County Clerk
Limestone County

5

# Exhibit 2

Cause No. 28,939-A

| | | |
|---|---|---|
| DEBBIE ECHOLS and | § | IN THE DISTRICT COURT OF |
| RHONDA ECHLS, | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | LIMESTONE COUNTY, TEXAS |
| v. | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | 77th JUDICIAL DISTRICT |
| DEFENDANT. | § | |

## NOTICE TO STATE COURT OF REMOVAL

The United States of America, on behalf of the U.S. Department of Agriculture, Farm Service Agency, Defendant, respectfully notifies this Court that it has filed a Notice of Removal of this case to the United States District Court for the Western District of Texas, Waco Division. A copy of the notice effectuating this removal is attached as Exhibit "A" without exhibits. Written notice of the filing of the Notice of Removal has been given to the Plaintiff by service through the U.S. Mail.

Respectfully submitted,

JOHNNY SUTTON
UNITED STATES ATTORNEY

By: 

STEVEN B. BASS
Assistant United States Attorney
Florida State Bar No. 767300
816 Congress Avenue, Suite 1000
Austin, Texas 78701
(512)916-5858/Fax(512)916-5854

ATTORNEYS FOR THE
UNITED STATES OF AMERICA

Page 1 of 2

## CERTIFICATE OF SERVICE

I, Steven B. Bass, do hereby certify that a true and correct copy of the above and foregoing **Notice to State Court of Removal** has been served by placing same in the United States mail, Certified Return Receipt Requested postage prepaid, on this the 9th day of February 2009, addressed to:

Debbie Echols
11906 Duane Street
Houston, Texas 77047

Rhonda Echols
2738 Troy Drive
Missouri City, Texas 77459

STEVEN B. BASS
Assistant United States Attorney

WO9CA033

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Debbie Echols and Rhonda Echols
Pro Se

**DEFENDANTS**
United States of America

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Debbie Echols, 11906 Duane Street, Houston, Texas 77047; Ronda Echols, 2738 Troy Drive, Missouri City, Texas 77459  Ph: (713)412-7715

Attorneys (If Known)
Steven B. Bass, Assistant U.S. Attorney   Ph: (512) 916-5858
816 Congress Ave., Suite 1000, Austin, Texas 78701

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

1  U.S. Government Plaintiff

3  Federal Question (U.S. Government Not a Party)

X 2  U.S. Government Defendant

4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reapportionment |
| 120 Marine | 310 Airplane | 362 Personal Injury - Med. Malpractice | 620 Other Food & Drug | 423 Withdrawal 28 USC 157 | 410 Antitrust |
| 130 Miller Act | 315 Airplane Product Liability | 365 Personal Injury - Product Liability | 625 Drug Related Seizure of Property 21 USC 881 | | 430 Banks and Banking |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | 368 Asbestos Personal Injury Product Liability | 630 Liquor Laws | **PROPERTY RIGHTS** | 450 Commerce |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | | 640 R.R. & Truck | 820 Copyrights | 460 Deportation |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 650 Airline Regs. | 830 Patent | 470 Racketeer Influenced and Corrupt Organizations |
| 152 Recovery of Defaulted Student Loans (Excl. Veterans) | 345 Marine Product Liability | 370 Other Fraud | 660 Occupational Safety/Health | 840 Trademark | 480 Consumer Credit |
| | 350 Motor Vehicle | 371 Truth in Lending | 690 Other | | 490 Cable/Sat TV |
| 153 Recovery of Overpayment of Veteran's Benefits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | 810 Selective Service |
| 160 Stockholders' Suits | 360 Other Personal Injury | 385 Property Damage Product Liability | 710 Fair Labor Standards Act | 861 HIA (1395ff) | 850 Securities/Commodities/Exchange |
| 190 Other Contract | | | 720 Labor/Mgmt. Relations | 862 Black Lung (923) | 875 Customer Challenge 12 USC 3410 |
| 195 Contract Product Liability | | | 730 Labor/Mgmt.Reporting & Disclosure Act | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| 196 Franchise | | | 740 Railway Labor Act | 864 SSID Title XVI | 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | 865 RSI (405(g)) | 892 Economic Stabilization Act |
| 210 Land Condemnation | 441 Voting | 510 Motions to Vacate Sentence | 790 Other Labor Litigation | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 220 Foreclosure | 442 Employment | **Habeas Corpus:** | 791 Empl. Ret. Inc. Security Act | 870 Taxes (U.S. Plaintiff or Defendant) | 894 Energy Allocation Act |
| 230 Rent Lease & Ejectment | 443 Housing/ Accommodations | 530 General | | 871 IRS—Third Party 26 USC 7609 | 895 Freedom of Information Act |
| 240 Torts to Land | 444 Welfare | 535 Death Penalty | | | 900 Appeal of Fee Determination Under Equal Access to Justice |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 540 Mandamus & Other | | | |
| X 290 All Other Real Property | 446 Amer. w/Disabilities - Other | 550 Civil Rights | | | 950 Constitutionality of State Statutes |
| | 440 Other Civil Rights | 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

1 Original Proceeding

X 2 Removed from State Court

3 Remanded from Appellate Court

4 Reinstated or Reopened

5 Transferred from another district (specify)

6 Multidistrict Litigation

7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 2410

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):  JUDGE _____  DOCKET NUMBER _____

DATE  2/9/09

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____